UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-60803-SMITH/REID

MANDY G. LEIGH,

    Plaintiff,

v.

ROBERTO MARTIN LEIGH,

    Defendant.

_____/

### ORDER ON NONPARTY
### MOTION TO QUASH OR FOR PROTECTIVE ORDER

Two nonparties, Birnbaum, Lippman & Gregoire, PLLC and Slater & Small, PLLC (collectively "law firms"), move the Court to quash subpoenas *duces tecum* served on them by Plaintiff Mandy Leigh. [ECF No. 36]. For the following reasons, the nonparty motion to quash is **GRANTED**.

### I.  Background

**A.  Plaintiff's Defamation Action and State Court Proceedings**

Plaintiff Mandy Leigh brought this action against her brother, Defendant Roberto Leigh, for one count of defamation. [ECF No. 1]. Plaintiff alleges Defendant falsely stated to their family members and others that Plaintiff stole or wrongfully appropriated assets from their parents, Silvia and Norman Leigh. [*Id.* ¶ 20(e)]. Plaintiff served subpoenas on several nonparties in this case, including the law firms, seeking evidence of communications from Silvia or Roberto Leigh alleging or conveying she misappropriated assets belonging to Silvia and Norman Leigh. *See* [ECF No. 36-2 at 5].

1

According to the law firms' motion to quash, Silvia and Norman Leigh are parties to a divorce action pending in Florida state court. [ECF No. 36 at 1]. The law firms explain that Silvia Leigh and her son, Roberto Leigh, have instituted a guardianship proceeding for Norman Leigh in the same Florida court. [*Id.*]. Birnbaum, Lippman & Gregoire, PLLC ("BLG") represents Silvia Leigh in the divorce proceedings, and Slater & Small, PLLC ("Slater") represents Silvia Leigh and Roberto Leigh in the guardianship action. [*Id.* at 2]. The law firms note that the divorce action was recently consolidated with the guardianship action, and that Silvia Leigh executed a durable power of attorney naming Roberto Leigh as her attorney-in fact/agent so he may assist her with the legal proceedings. [*Id.* ¶ 3; ECF No. 36-1 at 3].

**B. Discovery Hearing and the Law firms' Motion to Quash**

On August 16, 2023, this Court conducted a discovery hearing regarding Plaintiffs' subpoenas, including the ones served on the law firms. At the end of the hearing, the Court authorized the law firms to file a written motion to quash or for protective order. In response, the law firms filed the motion to quash at issue, gathered responsive documents, and generated a partial privilege log representative of the responsive documents.[1] [ECF No. 36 at 7 n.7]. Law firm BLG contends, however, that any documents responsive to requests 1, 2, and 3 of the subpoenas are protected by the attorney-client privilege because such communications were made in the course of litigating the divorce and guardianship proceedings. [ECF No. 36 at 1].

In opposition to the motion to quash, Plaintiff contends the subpoena requests are proper because Plaintiff is not seeking production of direct communications between Silvia Leigh and her counsel. Instead, she seeks evidence of defamatory statements that should not be shielded by the

---

[1] The law firms' privilege log is attached to the motion to quash as Exhibit 4. [ECF No. 36-4].

2

attorney-client privilege. [ECF No. 37 at 4–5]. She contends the communications are relevant to allegations in the Complaint that:

> In or around the fall of 2022, R[oberto] Leigh falsely published to attorneys for his mother that [Plaintiff Mandy] Leigh had stolen some unclear sum from his mother, on information and belief, believed to be the sum of $400,000. Those attorneys then published to attorneys for N[orman] Leigh that [Plaintiff Mandy] Leigh had "removed some $400,000 …without permission" and that these funds had been "taken" without the knowledge of N[orman] Leigh or S[ilvia] Leigh.

[ECF No. 1 at 10 ¶ 26(c)]. But even if the communications in the law firms' control is privileged, Plaintiff argues, the crime-fraud exception entitles her to discovery of the communications. Finally, Plaintiff argues the law firms have not established the existence of an attorney-client relationship with Silvia Leigh because they refuse to provide Plaintiff with a complete version of the power of attorney executed in favor of Defendant Roberto Leigh. [*Id.* at 5].

## II.   Legal Principles

Any party or person from whom discovery is sought can seek a protective order from the court. Fed. R. Civ. P. 26(c)(1). Discovery is limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense and proportional to the needs of the case." Fed R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 45, in turn, provides that, upon a timely motion, "the court for the district where compliance is required must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. 45(d)(3)(A)(iii)–(iv); *see also Drummond Co., Inc. v. Collingsworth*, No. 14-MC-81189, 2014 WL 12674466 (S.D. Fla. Nov. 21, 2014).

> The attorney-client privilege is the oldest of the common-law privileges. The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients . . . ." "The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." Thus, in order to claim attorney-client privilege, the proponent of the privilege must prove that what is sought to be protected is (1) a communication (2) made between privileged persons (3) in

confidence (4) for the purpose of obtaining or providing legal assistance for the client.

*Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1198 (S.D. Fla. 2021) (cleaned up) (internal citations omitted).

### III.    Discussion

Here, the two nonparty subpoenas contain four nearly identical requests:

1. Any and all COMMUNICATIONS from Roberto Leigh which references, refers to or contains any COMMUNICATIONS alleging, claiming, or conveying that PLAINTIFF "removed," stole, misappropriated or misused any assets of Silvia and/or Norman Leigh, including but not limited to as referenced in the email dated November 9, 2022 sent by Hanit Simon.

2. Any and all communications from Silvia Leigh which references, refers to or contains any COMMUNICATIONS alleging, claiming, or conveying that PLAINTIFF "removed," stole, misappropriated or misused any assets of Silvia and/or Norman Leigh, including but not limited to as referenced in the email dated November 9, 2022 sent by Hanit Simon.

3. Any and all COMMUNICATIONS, including but not limited to text messages and e-mails, between YOU and any attorney or representative from the [other nonparty] law firm . . . REGARDING or referring to PLAINTIFF, from 2021 to the present.

4. Any and all COMMUNICATIONS, including but not limited to text messages and e-mails between YOU and any attorney or representative from the Friedman Elder Law Department REGARDING or referring to PLAINTIFF, from 2021 to the present.

[ECF No. 36-2 at 5; 36-3 at 5].

BLG, which represents Silvia Leigh in the divorce proceedings, argues requests 1, 2, and 3 are protected by the attorney-client privilege. Request 4, BLG argues, is not at issue because they found no documents responsive to this request. [ECF No. 36 at 6]. Slater, which represents Silvia and Roberto Leigh in the guardianship action does not object on a privilege basis as to requests 1 and 2, because, unlike the subpoena served on BLG, requests 1 and 2 of the Slater subpoena ask for "any and all *nonprivileged* COMMUNICATIONS." [ECF No. 36-3 at 5] (emphasis added).

4

Slater notes, however, that it reserves the right to object on the basis of all relevant privileges if they become applicable. [ECF No. 36 at 6 n.1]. Because both law firms seek to protect attorney-client privileged communications, I will address the privilege with respect to the discovery directed to both law firms.

1. **Request 1 – Communications between Roberto Leigh and the Law Firms**

BLG argues communications between it and Roberto Leigh are protected by the attorney-client privilege because Roberto Leigh was acting in his capacity as attorney-in-fact/agent to assist his mother (BLG's client), Silvia Leigh. BLG adds that the power of attorney specifically authorized Roberto Leigh to be involved in any legal matter she is a part of. Plaintiff, in turn, argues that Roberto Leigh was acting in his own interest and not as a fiduciary or agent of Silvia Leigh, and the attorney-client privilege is therefore inapplicable. Plaintiff adds that the crime-fraud exception makes any privileged communication discoverable because Defendant was engaging in criminal slander or libel when communicating with counsel.

The Court finds that BLG, as the proponent of the privilege, has met its burden of establishing that communications between Roberto Leigh and BLG were made between privileged persons, in confidence, for the purpose of obtaining or providing legal assistance for the client. Silvia Leigh stated in a declaration attached to the motion to quash that she "retained [BLG] to represent my interests including the dissolution of marriage proceeding currently pending in [state court]." [ECF No. 36-1 at 2]. She declared that she "require[s] Roberto Leigh's assistance to adequately obtain legal advice and assist in obtaining legal representation" and "this is further evidenced by my execution of a Durable Power of Attorney, naming Roberto Leigh as my Agent/Attorney in Fact." *Id.* The declaration contains an excerpt to the power of attorney, which states: "I specifically authorized Robert Leigh to do the following:

> My Agent may institute, supervise, prosecute, defend, intervene in, abandon, compromise, adjust, arbitrate, settle, dismiss, and appeal from any and all legal, equitable, judicial or administrative hearings, actions, suits or proceedings involving me in any way. This authority includes, but is not limited to, claims by or against me arising out of property damage or personal injury suffered by or caused by me or under circumstances such that the resulting loss may be imposed on me. My Agent may otherwise engage in litigation involving me, my property or my legal interests, including any property, interest or person for which or whom I have or may have any responsibility.

[*Id.* at 3].

On its face, the power of attorney establishes that Roberto Leigh was acting as Silvia Leigh's agent in legal proceedings. Plaintiff points to no authority to support her position that the law firms must provide the complete version of the power of attorney to show that Roberto Leigh was acting as Silvia Leigh's agent. The Court finds that BLG has provided sufficient evidence to establish that communications between Roberto Leigh, in his capacity as Silvia Leigh's agent, are protected by the attorney-client privilege. Further, it is apparent from the face of the subpoenas that the requests seek information made in confidence for the purpose of obtaining legal advice. *See Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1328 n. 3 (11th Cir. 2020) (rejecting argument that detailed privilege log was needed when "it is apparent from the face of the subpoena that the information sought therein falls within the plain language of [Georgia secrecy act]").

Regarding the crime-fraud exception, Plaintiff fails to present any evidence of crime or fraud being perpetrated by Roberto Leigh. For the crime-fraud exception to apply, first, "there must be a *prima facie* showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice." *Diamond Resorts U.S. Collection Dev., LLC*, 519 Supp. 3d at 1221 (quoting *United States*

*v. Cleckler*, 265 F. App'x 850, 853 (11th Cir. 2008)). Mere allegations of fraudulent conduct are insufficient. *See id*. "Such a showing must have a foundation in fact." *Id*. Second, "there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *Id*. Plaintiff's circular and conclusory arguments that Defendant engaged in slander or libel and that the communications are crime themselves are insufficient to make the requisite *prima facie* showing of a nexus between a crime or fraud and the specific communications and documents at issue. Because BLG has established that the communications are privileged and Plaintiff has failed to show any exception or waiver applies, this Court *must* quash Request 1 of the subpoena. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii). BLG's motion to quash Request 1 of the nonparty subpoena is **GRANTED**.

    2. **Request 2- Communications between Silvia Leigh and the Law Firms**

BLG argues its communications with Silvia Leigh are facially privileged. The communications were made for the purpose of obtaining legal advice and were kept confidential. The fact that Roberto Leigh was included on email chains does not eviscerate the privilege given that he acted as Silvia Leigh's attorney-in fact/agent. Plaintiff does not dispute that Silvia Leigh is BLG's "true" client [ECF No. 37 at 14]. But she asserts any attorney-client privilege was waived because Roberto Leigh was included as a recipient of the email communications.

Again, Plaintiff is wrong. "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Id*. at 1197 (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). Roberto Leigh's involvement was reasonably necessary for BLG to provide effective legal representation. Silvia Leigh stated as much in her sworn declaration. Under these circumstances, Roberto Leigh qualifies as "privileged person," and thus, including him in the communications did not defeat

7

Silvia Leigh's attorney-client privilege. BLG's motion to quash Request 2 of the nonparty subpoena is **GRANTED**.

### 3. Request 3 - Communications Between BLG and Slater

BLG and Slater argue communications between the attorneys representing Silvia Leigh in the guardianship and divorce proceedings are protected from disclosure by the common interest privilege. The common interest privilege is an exception to the general rule that the voluntary disclosure of privileged material to a third party waives the attorney-client privilege. *See United States v. Patel*, 509 F. Supp. 3d 1334, 1340 (S.D. Fla. 2020). The divorce and guardianship proceedings are related because the divorce may not proceed if it is determined that Norman Leigh lacks the capacity to institute the divorce proceeding and a guardianship is instituted. In other words, the guardianship proceeding has a direct effect on the resolution of the divorce proceeding. Plaintiff argues the common interest doctrine applies only when the parties have a shared interest in actual or potential litigation against a common adversary. She argues the divorce and guardianships were filed in early October 2022 but were not consolidated until May 9, 2023. Thus, Plaintiff argues, the matters are "separate" and not a common interest.

The Court finds the law firms have satisfied their burden of establishing that the communications are protected by the common interest privilege. *See id.* ("The burden of establishing the common interest privilege is on the party asserting it."). The law firms have established the elements of this doctrine: "(1) there was a common legal interest among them, (2) the parties are represented by separate lawyers and, (3) the parties (with their lawyers) agreed to exchange information concerning the matter of common interest." *Id.* The law firms clearly share a common interest here as the state court consolidated the proceedings given the number of related issues and parties. The parties are represented by separate lawyers, and they agreed to exchange

information concerning their common interest in representing Silvia Leigh's interests. Thus, regardless of the date on which the guardianship and divorce cases were consolidated by the court, there was a common legal interest among both the represented party and the law firms. BLG and Slater's motion to quash Request 3 is **GRANTED**.

### IV.    Conclusion

In sum, the nonparty law firm's motion to quash subpoena requests 1, 2, and 3 is **GRANTED**. [ECF No. 36] The law firms should make clear that they have no documents responsive to request 4 if they have not done so already.

**DONE AND ORDERED** in Chambers at Miami, Florida this 5th day of January 2024.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    **All Counsel of Record**